**In re MARRIAGE OF: Irene Ann
BRUSKE and George
William Bruske.**

**Irene Ann BRUSKE, Appellant,**

v.

**George William BRUSKE, Respondent.**

No. WD 33954.

Missouri Court of Appeals,
Western District.

Aug. 9, 1983.

Edward F. Ford, II, Kansas City, for appellant.

Kenneth C. Hensley, Wilbur L. Pollard, Kansas City, for respondent. .

Before WASSERSTROM, P.J., and TURNAGE and CLARK, JJ.

CLARK, Judge.

This appeal in this dissolution of marriage case is prosecuted by the wife from the portions of the judgment designating non-marital property, the general division of marital assets and the amount awarded as child support. No appeal was taken as to

the judgment dissolving the marriage and that decree has matured to finality. (§ 452.360, RSMo 1978 [1]). The judgment is affirmed.

■ The first issue considered in this case, although not presented by the parties in their briefs, is whether the associate circuit judge who heard and decided the case had jurisdiction to do so. The problem is apparent on the face of the record because this is a contested dissolution of marriage case and associate judges have no original jurisdiction in such matters. Section 478.-225.4. Associate judges may hear matters outside their original jurisdiction by assignment or transfer, but the record in this case contained no order of transfer or assignment. The duty of this court to consider sua sponte the issue of jurisdiction is firmly established. *Frederick v. Frederick,* 617 S.W.2d 629 (Mo.App.1981).

Upon notice to counsel of the jurisdiction issue a stipulation was filed to supplement the record. The stipulation included an extract from the local rules of the Sixth Judicial Circuit. The parties jointly suggest that jurisdiction was acquired by the associate judge by reason of Local Rule 6 which reads in part as follows:

"The following classes of cases are assigned as follows, and shall be filed by the Circuit Clerk of Platte County, Missouri, as follows:

A. All actions for Dissolution of Marriage, Legal Separation, Child Custody and Child Support, Separate Maintenance, and Motions to Modify Decrees of Dissolution of Marriage, Legal Separation, Separate Maintenance, Child Custody, and Child Support, including injunctive relief relative thereto, shall be assigned equally, at random, to Division II and Division III."

The courts in the Sixth Judicial Circuit are constituted in four divisions. The circuit judge, who is the presiding judge (Article V, § 15, Subsection 3, Constitution of Missouri) presides in Division I. Associate circuit judges preside in Division II, III and IV, the last numbered division being assigned probate matters. In consequence of the local rule above quoted, all dissolution of marriage cases, contested and uncontested, are handled from inception to disposition in Platte County by an associate circuit judge. Because the rule directs the action to be taken by the circuit clerk when the case is filed, the circuit judge performs no function in disposition of marriage dissolution cases and makes no determination as to the assignment of the cases except under the blanket directive of the rule.

■ The jurisdictional issue in the case is whether the applicable statutes authorize the presiding judge of the circuit to invest the associate circuit judges serving under him with primary and exclusive responsibility for disposition of contested dissolution of marriage cases by adopting a local rule to this effect.[2]

■ The general jurisdiction of associate circuit judges to hear and decide classes of cases is narrowly circumscribed, in the first instance, by § 478.225:

"Associate circuit judges, cases and matters within their jurisdiction.—

\*　　\*　　\*　　\*　　\*　　\*

2. Each associate circuit judge within the counties or city of St. Louis for which he is an associate circuit judge may hear and determine the following cases or classes of cases:

(1) Except as otherwise provided by law, all civil actions and proceedings for the recovery of money, whether such action be founded upon contract or tort, or upon a bond or undertaking given in pursuance of law in any civil action or proceeding, or for a penalty or forfeiture given by any statute of this state, when the sum demanded, exclusive of interest

---

1. All statutory references are to RSMo 1978 except as noted.

2. Associate circuit judges have no vote in the adoption of local rules as such. In some circuits where only one circuit judge is provided,

the local rules are or may be promulgated by that single judge. This situation prevails in the Sixth Circuit where authority to adopt rules reposes in the circuit judge.

and costs, does not exceed five thousand dollars;

(2) All actions against any railroad company in this state, to recover damages for killing or injuring horses, mules, cattle or other animals within their respective counties, without regard to the value of such animals, or the amount claimed for killing or injuring the same;

(3) All cases of misdemeanor or infraction, except as otherwise provided by law;

(4) Felony cases prior to the filing of the information;

(5) Municipal ordinance violation cases of a municipality with a population of under four hundred thousand for which a municipal judge is not provided;

(6) 'Small claims' cases as provided in sections 482.300 through 482.365;

(7) In counties of less than seventy thousand inhabitants, when a circuit judge is absent from the county, cases that a circuit judge can hear in chambers;

(8) Such other cases that could be heard and determined by a magistrate judge without assignment as an acting circuit judge under provisions of law in effect on January 1, 1979, including but not limited to replevin, attachment and mechanic's lien actions where the recovery sought is less than five thousand dollars, actions for unlawful detainer authorized by chapter 534, RSMo, actions for rent and possession authorized by chapter 535, RSMo, and petitions for review of driver's license revocations and for hardship driving privileges; and

(9) Such other cases or classes of cases as may otherwise be specifically provided by law for associate circuit judges to hear and determine.

3. Each associate circuit judge within the county or the city of St. Louis for which he is an associate circuit judge may also hear and determine the following cases or classes of cases:

(1) Uncontested dissolution of marriage, legal separation or separate maintenance proceedings;

(2) Uncontested motions to modify decrees of dissolution of marriage, legal separation, separate maintenance, child custody and child support;

(3) Proceedings for change of name of a person;

(4) In counties of less than seventy thousand inhabitants, juvenile proceedings;

(5) Uncontested proceedings for the approval of settlement of suits involving claims by persons under eighteen years of age; and

(6) Uncontested actions involving the title to real estate.

4. An associate circuit judge shall not hear and determine cases other than those authorized by subsections 1, 2 and 3 of this section, except that associate circuit judges may hear and determine such case or classes of cases which are transferred or assigned to them pursuant to section 478.240 or 478.245 or section 6 of article V of the constitution.

5. The provisions of this section authorizing the hearing and determination of particular cases or classes of cases by associate circuit judges shall be subject to the transfer, assignment, and disqualification provisions contained in article V of the constitution, in provisions of law, or in court rules which are authorized by the constitution or by law."

\* \* \* \* \* \*

A legislative purpose to confine the judicial activity of associate judges to that formerly exercised by magistrates, with some few exceptions, is clearly expressed. Among the classes of cases which associate judges are directed not to hear are contested dissolutions of marriage.

Despite the constraint which the legislature imposed on the jurisdiction of associate judges, § 478.225.4 contains an exception as to cases or classes of cases, presumably without limit, which may be assigned or transferred to associate judges. For the procedure of assignment or transfer, reference is made to §§ 478.240 and 478.245. By reason of the affirmative assertion in the present case that the cited local rule in the Sixth Circuit is the only ground on which

the associate judge is contended to have acquired jurisdiction of the subject case, we look to § 478.245 which contains the statutory authority for adoption of local court rules. The statute reads:

"478.245. Circuit courts may adopt local rules, restrictions, procedure for adoption of rules.—

1. Subject to the provisions of article V of the constitution and authority exercised under such provisions, the circuit judges of the circuit may adopt local court rules which provide:

(1) Cases or classes of cases that may or shall be assigned to particular divisions of the circuit court;

(2) Filing (including the place of filing) and assignment systems for the circuit court of each county which may include (a) centralized filing procedures for cases which are heard by circuit judges, (b) centralized assignment procedures or individualized docketing procedures for cases or classes of cases which are heard by circuit judges, and (c) filing and assignment procedures for cases which are heard by municipal judges.

2. Notwithstanding the provisions of subsection 1 of this section, no such local circuit court rules:

(1) Shall provide for assignments which a presiding judge is prohibited from making by subdivisions (1), (2) and (4) of subsection 2 of section 478.240 or which are contrary to provisions of supreme court rules;

(2) Shall provide for the maintenance of the permanent case records and judgments of the circuit court other than with the circuit clerk, except records with respect to probate cases, misdemeanor and municipal ordinance violation cases, records in felony cases before the filing of an information, and records in cases within the categories of cases specified in subdivisions (1), (2) and (6) of subsection 2 of section 478.225; and

(3) Shall provide for the filing of cases or the maintenance of the permanent records in cases which are heard by municipal judges outside of the municipality providing the municipal judge, except in those situations where there is a trial de novo or the municipality consents to such filing or maintenance of records.

3. Local circuit court rules shall be adopted by a majority of the circuit judges of the circuit. A copy of each circuit court rule certified by the presiding judge of the circuit shall be filed with the circuit clerk and the clerk of the supreme court, and shall not become effective until so filed. Each local circuit court rule adopted prior to January 2, 1979, shall cease to be effective sixty days after that date if a copy thereof certified by the presiding judge of the circuit is not filed with the clerk of the supreme court during that period of time.

4. Subject to the provisions of article V of the constitution and authority exercised under such provisions, a majority of circuit and associate circuit judges of the circuit by order may provide for (1) centralized filing or divisional filing of cases or classes of cases which are heard by associate circuit judges and (2) centralized assignment procedures or individualized docketing procedures of cases or classes or cases which are heard by associate circuit judges. A copy of each such order certified by the presiding judge of the circuit shall be filed with the circuit clerk and the clerk of the supreme court, and shall not become effective until so filed."

A problem of statutory construction presented by the above quoted section, and throughout Chapter 478, results from the failure of the legislature to employ any precise or consistent usage of the terms "circuit court" and "judge of the circuit court." In some sections, the terms are inclusive of associate and municipal judges and in others they are not. For example, § 478.014 states: "The term 'judge of the circuit court' *as used in section 478.013* means circuit judge, and does not include an associate circuit judge or municipal judge." (Emphasis supplied).

In footnote two, *supra,* it is stated that associate judges have no vote in local rules.

That conclusion, by interpretation of § 478.245 above, is reached in the following manner. Subsection 3 of § 478.245 provides that local rules are to be adopted by a majority of the circuit judges. Subsection four of the same section provides that orders for centralized filing and assignment of cases heard by associate judges are to be adopted by a majority of the circuit and associate circuit judges. Within the confines of this section as to rules and orders, there is a sense of distinction between the judges who participate in rule making and those who vote on orders for administration of associate circuit court business. Thus, construed in light of its various parts, the designation "the circuit judges of the circuit" who may adopt local rules refers only to circuit judges and not to associate judges.

■ The next question is whether the succeeding reference to "particular divisions of the circuit court" includes only divisions where a circuit judge presides. Since associate judges do not participate in adopting the rules for assignment of cases to divisions but do participate in the adoption of orders governing assignment procedures in associate circuit divisions, the more reasonable construction of § 478.245.-1(1) quoted above is that local rules, to the extent they apply to assignment of cases to divisions, pertain only to divisions where a circuit judge presides. Certainly if orders cover the assignment of cases in the associate circuit court divisions, local rules on the same subject would be redundant.

The above analysis of § 478.245.1(1), however, fails to take into account § 478.225.4 which is the pivotal section in the jurisdictional question in this case. The contention is that the associate judge acquired jurisdiction by reason of the local court rule adopted under the authority of § 478.245.1(1) and, if that be so, then the rules for assignment are not limited to the divisions where circuit judges preside. The relevant portion of § 478.225.4 states:

"* * * associate circuit judges may hear and determine such cases or classes of cases which are transferred or assigned to them pursuant to * * * section 478.245 * * *."

Positioned as it is, following the expression of limitation on the general jurisdiction of associate judges, § 478.225.4 in its reference to § 478.245 can scarcely be construed as other than a direction to look to the last mentioned section as a vehicle for assigning to associate judges cases which are not otherwise within their general jurisdiction. The term "particular divisions of the circuit court" used in § 478.245.1(1) must therefore include the divisions of associate circuit judges, else § 478.225.4 would lack any effect at all in creating a transfer and assignment authority pursuant to § 478.245.

■ The conjunctive construction of §§ 478.245.1 and 478.225.4 appears to create an authority in the circuit judges to expand the statutory jurisdiction of associate circuit judges by adopting local rules designating any or all classes of cases by which that jurisdiction is enlarged. This result effectively emasculates any reservation by the legislature of authority to determine the jurisdiction of associate judges, leaving to the circuit judge or judges the decision in each circuit as to the extent which jurisdiction of associate judges will approach or equal the jurisdiction of circuit judges. There is obvious doubt that the legislature intended to achieve this result, leaving to the vagaries of the local rules in each circuit the jurisdictional definition. As demonstrated above, however, the statutes permit no other construction. We therefore conclude that the associate circuit judge in this case acted within his jurisdiction.

It should be noted that the subject of this opinion is limited to cases assigned to associate circuit judges pursuant to a local rule. This opinion does not consider issues of jurisdiction where the cause is transferred to an associate circuit judge by a method purportedly sanctioned under § 478.240.2.

■ An additional problem merits comment. In the present case, this court sought out the amplification of the record on appeal to include the local rule whereby the jurisdiction of the associate judge was contended to have originated. Practical ad-

ministration precludes such treatment in every case and, as to local rules, judicial notice cannot serve as a substitute for a deficient record. *Bank v. Pfeil,* 537 S.W.2d 680 (Mo.App.1976). Counsel must therefore be aware that if a local court rule is the source of jurisdiction in a case heard by an associate circuit judge, the rule must appear in the record on appeal or the appeal will be subject to dismissal on jurisdictional grounds.

Turning now to the merits of the present appeal, the wife first complains in an aggregate of six points and sub-points regarding disposition of certain shares of stock in Standard Oil Co. and Ultra Carbon. The decree as to these items set off to the husband 1192 shares in Standard Oil Co. as non-marital property acquired before the marriage, divided equally between the spouses an additional 1136 shares in Standard Oil Co. and similarly made an equal division of 240 shares in Ultra Carbon. In the various points the wife contends the division was erroneous because (a) the stock owned by the husband before the marriage was converted into marital property during the marriage and should have been divided (b) the Ultra Carbon stock was separate property of the wife and should not have been divided, and (c) the division of the Standard Oil Co. and Ultra Carbon stocks was a result either unsupported by the evidence, contrary to settled law or both.

■ The evidence as to acquisition of the stocks in question was in some respects disputed and in others inconclusive and mostly without documentation. As to the original shares of Standard Oil Co. stock, however, the husband testified that as an employee of the company, he had acquired 298.3264 shares owned by him before the marriage. He also stated, and the wife does not dispute, that those shares later split twice. From the judgment, it is apparent the trial judge accepted this evidence and by mathematical calculation, determined the non-marital asset owned by the husband to consist of 1192 shares. (298 × 2 = 596 × 2 = 1192). Despite other evidence to which the wife directs our atten-

tion touching on the number of shares involved, the evidence mentioned above was sufficient to support the finding made by the trial court as to the non-marital asset, *Komanetsky v. Komanetsky,* 632 S.W.2d 71 (Mo.App.1982), assuming contrary evidence and inferences were rejected. So long as there is credible evidence on which the trial court can formulate its beliefs, the appellate court may not substitute its judgment to reach a different result. *Vogt v. Ketzner,* 634 S.W.2d 583 (Mo.App.1982).

Assuming for the sake of the point that 1192 shares of Standard Oil stock did represent the accumulation of the husband's property owned before the marriage, the wife further argues that the stock should have been divided as marital property because it was "transmuted" by the conduct of the parties during the marriage. Cited in support of the transmutation concept is *Conrad v. Bowers,* 533 S.W.2d 614 (Mo.App. 1975) and subsequent cases.

■ Of course, it cannot be disputed that non-marital property may lose its character as such if the evidence shows an intention to contribute the property to the community. Evidence of a clear nature is required to support a claim that assets acquired prior to the marriage have become marital property. *Jaeger v. Jaeger,* 547 S.W.2d 207, 211 (Mo.App.1977).

The evidence here was that the husband owned Standard Oil shares before the marriage and retained them, together with the increase from stock splits, after the marriage. The parties also acquired additional Standard Oil stock during the marriage, those shares being treated by the court as marital property and divided. Respondent denied at trial that the shares owned by him before the marriage were commingled. The evidence relied on by the wife to show otherwise consisted of interrogatory answers, a statement of marital and non-marital property included in an exhibit filed by the husband and an acknowledgement by him that the wife had a right to draw on the assets if she decided to do so. Also stressed is the wife's claim of inconsistency because certain stock shares she owned be-

fore the marriage were ruled by the trial court to have been contributed by her to the marital fund.

■ Even assuming that admissions against interest contradicted by the party in direct evidence could constitute substantive proof of the issue, a doubtful proposition, the most that can be said is that evidence on the question conflicted. As has been repeatedly stated, the resolution of such conflict is a matter for the trial court. There is no de novo review by appeal. The judgment must be affirmed unless lacking in substantial evidence to support it or contrary to the weight of the evidence. *Budzinski v. Budzinski*, 632 S.W.2d 527 (Mo. App.1982). We find no ground to disturb the result here and do not perceive any inconsistency. The determination as to the wife's claim of separate property was based on different proof.

In a final point related to the Standard Oil stock, the wife contends that the proceeds of the stock splits generated by the original shares owned by the husband should be considered marital property because those shares were acquired during the marriage and they do not fall within any of the exceptions listed in § 452.330.2, RSMo Supp.1982.

■ The wife errs in this contention. From the standpoint of the issuing corporation, a stock split accomplishes no change in the amount of capital contribution to the corporation nor are the proportionate ownership interests of the shareholders altered. Whether by a surrender of the certificate evidencing the original number of shares for a certificate in the new amount of shares, or by receipt of an additional certificate reflecting added shares owned, the transaction is an exchange of one number of shares for another. Exchanges constitute a category of exception under § 452.-330.2, RSMo Supp.1982. Moreover, if it be suggested that the added shares resulting from the stock split constitute a value increment, the obvious reason for any contest over the subject, the nature of the transaction is such that the value is merely an increase by appreciation of the property

owned before the marriage. That, too, comes within a category of exception under § 452.330.2, RSMo Supp.1982.

■ In summary, we conclude that substantial evidence supports the designation by the trial court of 1192 shares of Standard Oil Co. stock as non-marital property to be set over to the husband and that the judgment to this effect neither erroneously declares nor erroneously applies the law.

The wife next complains that the division of marital assets was unjust because it was unduly weighted in favor of the husband. By the wife's calculations, the apportionment measured by values was 52% to the husband and 48% to her. The total of marital assets amounted to something more than $330,000.00. The wife contends she was due at least 50% in consideration of her contribution to acquisition of the property, the values of property set apart to each spouse and their economic circumstances and the conduct of the parties during the marriage.

■ As the court pointed out in *Budzinski v. Budzinski, supra,* there is no mathematical formula which prevails in division of marital property, let alone a presumption that any apportionment less than an equal division is suspect. The just division which the statute requires entails an exercise of discretion by the trial court to strike a proper balance between the equities in each case. Appellate courts are admonished not to interfere except when convinced that discretion has been abused. *Budzinski* at page 530.

■ The wife's complaint here borders on the frivolous. The trial judge made an obvious effort to apportion the assets fairly and in doing so, he struck very nearly an even balance. While the wife suggests that under the factors listed in the statute, she should have been favored in the property division, the evidence does not bear out her claim that the division which was accomplished indicates a disregard of those factors. Certainly there is no basis to find an

abuse of discretion by the trial judge warranting interference by the appellate court.

Finally, the wife asserts that the sum of $600.00 per month awarded to her as support for two children was grossly insufficient. From her employment as a teacher, the wife earns approximately $19,500.00 a year. The husband's income in 1981 was $24,000.00. According to the wife, monthly expenses for herself and the children totaled $2,659.00. Quite apparently, the sum spent on the children, although not set out separately, was attributable in part to private school tuition of $2,195.00 a semester, summer excursions to a home in Michigan, designer clothes and club memberships. After provision for income taxes, the total earnings by both parties from employment are insufficient to meet this level of expenses. Some reductions obviously are required.

 Section 452.340 instructs that a father owes the primary duty of support for his children, but the mother may also be called upon to provide support where she has the ability to do so. *Brueggemann v. Brueggemann,* 551 S.W.2d 853, 859 (Mo. App.1977). The determination of the amount of child support awarded rests within the sound discretion of the trial court and is subject to review only to determine whether there has been an abuse of discretion or an erroneous application of the law. *Oberkrom v. Oberkrom,* 608 S.W.2d 449 (Mo.App.1980).

We are unable to ascertain from the evidence whether the wife separately estimated monthly expenses for the children and, as a consequence, it cannot be ascertained what proportion of those expenses is satisfied by the award of $600.00. In her brief the wife stresses the importance of continuing to maintain a life style equal to that enjoyed when the parties maintained a single home and argues that the substantial assets set over to the husband enable him to bear a greater burden of support than the amount awarded.

 The fact that reasonable minds may differ on the calculation of a dollar amount to be ordered as child support is a prime consideration supporting the rule, cited above, that appellate review of the subject is limited. The reviewing court is constrained to limit interference in these matters to those cases where an abuse of discretion is demonstrated. While the wife's contention here that she should be allowed an added $200.00 a month for child support and a contribution to the private school tuition cannot be branded as unreasonable, the allowance which was made is not disproportionate to the husband's income or resources. Under the facts, we do not find that the award amounted to an abuse of the discretion reposed in the trial court and we will not undertake to direct any revision.

The judgment is affirmed.

All concur.