Artie E. TRUE, Jr., Respondent,

v.

Sandra J. TRUE, Appellant.

No. WD 39885.

Missouri Court of Appeals,
Western District.

Dec. 6, 1988.

Howard C. Hoyt, Kansas City, for appellant.

Roger M. Driskill, Richmond, for respondent.

Before KENNEDY, C.J., and MANFORD and BERREY, JJ.

BERREY, Judge.

Sandra J. (True) Battiest (wife) appeals from that portion of the decree of dissolution of her marriage to Artie E. True (husband) which divides the marital property. She alleges error in that: (1) the trial court left a forty acre tract of land titled in both parties' names to be held by the parties as tenants in common; (2) the trial court classified all of the real property as marital property in that the court did not apply the "source of funds" rule; and (3) the trial court demonstrated bias in favor of the husband and prohibited the introduction of evidence of marital misconduct.

The Trues were married in May, 1982 in Excelsior Springs, Missouri. They separated in December, 1986. The subject of this appeal is the real property accumulated by the parties both before and during the marriage, a total of five pieces in all. These pieces of property are: (1) a single family dwelling on Kennedy Street in Excelsior Springs, Missouri (Kennedy property); (2) a lake lot at Lake Neha in Linn County, Missouri (Lake Neha property); (3) a mobile home and lot on Rural Route 2, Excelsior Springs, Missouri (Route # 2 property); (4) a duplex on North Thompson in Excelsior Springs, Missouri (Thompson property); and (5) an unimproved forty-acre tract in Hickory County, Missouri (Hickory County property). Appellant first alleges error in that portion of the trial court's order which reads:

> The parties shall hold the property located in Hickory County, Missouri described as follows, to-wit:
> (1) All that part of the SW ¼ of the SE ¼ and all that part of the SE ¼ of the SW ¼ in Section 22 lying South of State Road Route H in Twp. 36 N., R23 W of the Fifth Principal Meridian in Hickory County, Missouri.
> Value—$16,500.00.
> as tenants in common, an undivided one-half interest each.

■ Unless there is some evidence which shows the necessity for continuing a tenancy in common, it is improper for the trial court to leave property vested jointly in the parties after a dissolution. *Henderson v. Henderson*, 746 S.W.2d 99, 100 (Mo.App.1988); *Hagar v. Hagar*, 722 S.W.2d 358, 360 (Mo.App.1987). This mandate stems from section 452.330, RSMo 1986, which directs the trial court to, "divide the marital property in such proportions as the court deems just after considering all relevant factors." Moreover, this court has held, "that except in the most unusual case, a complete division of marital property should be achieved in the dissolution decree." *In re Marriage of Farquhar*, 719 S.W.2d 456, 458 (Mo.App.1986). Accordingly, as the instant case presents no compelling reasons for continuing a tenancy in common, that portion of the trial court's order is disapproved.

Appellant next complains of the classification of all the real property as marital property, in that the trial court did not apply the "source of funds" rule to the individual tracts of land, nor make allowances for property purchased by appellant prior to the parties' marriage. The relevant portion of the trial court's order reads:

> That the following items of property are awarded to Sandra Jean True, as follows:
> (1) Lots 1, 2, 3, and 4 in Block 2, Wert's Addition to the City of Excelsior Springs, Clay County, Missouri. This property is located at 408 N. Thompson in Excelsior Springs, MO., 64024. Value—$6,000.00. Sandra Jean True is to assume the mortgage indebtedness on this property and hold Artie Edward True, Jr. harmless thereon.
> That the following items of property are awarded to Artie Edward True, Jr., as follows:

(1) Lot 41 in Homestead Estates in Ray County, Missouri. Value—$13,000.00. The address is Route # 2, Box 228, Excelsior Springs, Ray County, Missouri. Artie Edward True, Jr. is to assume the indebtedness thereon and hold Sandra Jean True harmless thereon.

The parties shall hold the property located in Hickory County, Missouri described as follows, to-wit:

(1) All that part of the SW ¼ of the SE ¼ and all that part of the SE ¼ of the SW ¼ in Section 22 lying South of State Road Route H in Twp. 36 N., R23 W of the Fifth Principal Meridian in Hickory County, Missouri.

Value—$16,500.00.

as tenants in common, an undivided one-half interest each.

The following items of property are set over to Respondent Sandra Jean True as her sole and separate property including the following tract of real estate:

(1) A single-family dwelling at 844 Kennedy Street in Excelsior Springs, Missouri described as follows: All of Lot 3 except the east 21 feet; All of Lots 4 and 5 in Block 1, in Henry Addition to the City of Excelsior Springs, Clay County, Missouri, according to the plat thereof.

(2) Lake lot at Lake Neha, Plat 2 Lot 281 in Linn County, Missouri. No evidence as to value. Subject to a mortgage indebtedness in favor of Norwest Financial Corporation of $4,804.66.

The evidence at trial showed that husband and wife kept separate checking accounts throughout their marriage. Both were employed at the General Motors Assembly Division—Leeds before they were laid off. During their marriage they acquired several pieces of property. Under section 452.330.3, RSMo 1986, "All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in some from of coownership...."

Three of the pieces of property that are the subject of this dispute were acquired by the parties during the marriage, the Hickory County property, the Route # 2 property and the Thompson property. The Hickory County property was titled in the names of both of the parties and both were on the mortgage. Wife testified that she alone made the $4,500 downpayment and the subsequent payments from her separate account. The husband had made some repairs to a building on the property, putting a new roof on it.

The Thompson property was titled in the wife's name only, although husband's name was on the mortgage. Wife again put down the money to acquire the property and made all subsequent payments. Husband did some work on the property during the marriage, fixing some windows and laying the carpet. This property was a duplex used as a rental property.

The Route # 2 property is a trailer and lot in Homestead Village. It had been the marital residence for about a year and was titled in the names of both parties. Husband purchased the mobile home and lot during a separation of the parties and after they had reconciled he placed her name on the title. At the time of the trial, this property was rented out. Husband made mortgage payments on the property out of the rental he received.

The other two parcels of property in question were purchased by wife before the marriage. The Kennedy property was acquired in April, 1982, a month before the parties married. The parties maintained their home there for about five years. Wife placed a $3,000 downpayment on the property and made the payments on it. Husband testified that he did work on the property and put some of his money into it.

The last parcel of property in question was the Lake Neha property. The title is in wife's name only, as is the mortgage. Wife testified that, "Artie wanted to buy it and he asked me to put it in my name because he was going through a divorce." She made the downpayment on the property but was paid back one-half of that payment by respondent. She has been making

payments on it since the parties' last separation in 1986.

█ In a dissolution action the burden is on the spouse who claims that the property is separate to overcome the presumption of marital property and show that it falls into one of the exceptions listed in section 452.330.2, RSMo 1986. *Corbett v. Corbett,* 728 S.W.2d 550 (Mo.App.1987). Appellant cannot meet this burden. She relies on the "source of funds" rule first announced in *Hoffmann v. Hoffmann,* 676 S.W.2d 817 (Mo. banc 1984), in support of her assertion of error on the part of the trial court concerning the character of the property in question. *Hoffmann* uses the "source of funds" doctrine to investigate just when a property is acquired. It is considered acquired as payments are made upon it. *Id.* at 825. The Hickory County property and the Thompson property were both acquired after the parties were married. No claim was made by the wife that the funds she used were not marital funds but merely funds from her separate checking account. The source of these funds is not claimed to be one of the exemptions offered by section 452.330.2.

Nor were the parties' financial affairs as pristinely separate as it appears on the surface. Respondent testified:

A. Yes, we both—She wrote down all the bills on her car that she had, '79 Fairmont, all the insurance, all the food, groceries, clothing, everything, and we split them half-and-half.

Q. So, at this time—Let's go back to right in the beginning of the marriage. Did you have a joint checking account?

A. We never did have one until about three or four years after we were married. She never wanted one.

. . . .

Q. When you maintained a separate checking account, what sort of—what sort of purchases and property, whatever, would you make out of that account? What kind of things would you buy?

A. Mostly I had to pay for my half of the bills around the home, and then I went into—I purchased a $500 selling

—I went to small business selling with bell saw and lawnmowers and stuff. I've got several riding mowers and stuff like that setting around, a lot of trading cars and trucks and stuff.

Q. And out of that checking account, you would make payments on the Kennedy property?

A. No. She always wrote the check for all the bills.

Q. Okay. So, after the marriage, out of your funds, being your personal checking account, you make no payments on the Kennedy property?

A. Say what now? After we was married, I made no payments.

Q. On separate checking accounts—

A. No, didn't say that. I always gave her the money for the payments on the Kennedy.

Q. This would come out of—

A. We'd figure up the monthly bills and I would pay her half of what the monthly bills was, but I never gave her a check. I always gave her the cash, or whatever.

Given the nature of the financial dealings of the parties and keeping in mind the deference which should be accorded to the trial court's "coign of vantage" in judging the credibility of the witnesses, *Hoffmann v. Hoffmann, supra,* 676 S.W.2d at 826, it is clear that the designation of the property as marital by the trial court was not clearly erroneous.

█ It is also true that non-marital property may lose its character as such if there is evidence which clearly shows that there existed an intention to contribute the property to the community. *In re Marriage of Bruske,* 656 S.W.2d 288 (Mo.App. 1983). Here that evidence strongly supports the trial judge's determination. The Route # 2 property was purchased by husband during one of the separations undergone by the parties. However, after they had reconciled this property became the marital home and appellant's name was placed on the title. So too do the two properties purchased by appellant fall within this category. The Kennedy property

was used as the marital residence for five years and respondent contributed his share on the payments and worked on the house. The Lake Neha property was bought by appellant at respondent's request. She was repaid half of the downpayment by respondent. Under the circumstances presented here, the determination made by the trial court, that the property was all marital property, was not improper. Appellant's Point II is denied.

Appellant's final contention alleges bias by the trial court in favor of respondent. An examination of the record does not bear out this interpretation, however. The appellant complains of the trial court's questioning of respondent regarding his wishes as to the distribution of the property. Given the somewhat confusing and involved history of each parcel the questions asked by the trial judge were not at all inappropriate. A trial judge has an inherent right to question a witness as to matters which are material to the issues involved. *McClelland v. Williamson,* 627 S.W.2d 94, 99, (Mo.App.1982). Also, worthy of note is the fact that no objection was made to this questioning at the time of the trial.

Appellant contends that this bias can be shown by what she characterizes as an improper refusal on the part of the trial court to allow evidence of marital misconduct on the part of the respondent. As an example she points to where respondent's action of changing the name of the beneficiary on his life insurance policy is being developed upon cross-examination. Respondent added the name of his fiance to the policy sometime after he and appellant separated. After respondent had explained that he put his fiance's name on the form this exchange took place:

THE COURT: What are you trying to show, marital misconduct?

MR. FLUKER: Your Honor, I'm just trying to show that—

THE COURT: The Court's not going to consider these because, apparently, she's—if what he say is correct, she's done the same thing by adding other people.

MR. FLUKER: I'm just saying—

THE COURT: I don't care. That's his policy and she's got one just like it, and they both made changes.

It is somewhat in the nature of overkill to call this exchange a prohibition against the introduction of evidence of marital misconduct on the part of the respondent. Appellant's Point III is denied. Thus, the judgment of the trial court is affirmed in part and reversed in part and remanded with directions to properly divide the Hickory County property.

All concur.