Dian STAMATIOU, Respondent,

v.

EL GRECO STUDIOS, INC., d/b/a Greek
Islands Restaurant, Appellant.

No. WD 48246.

Missouri Court of Appeals,
Western District.

Feb. 28, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 2, 1995.

Application to Transfer Denied
June 20, 1995.

Allen S. Russell, Allen S. Russell, Jr., Kansas City, for appellant.

Keith E. Drill, Wyrsch, Atwell, Mirakian, Lee & Hobbs, P.C., Kansas City, for respondent.

Before ULRICH, P.J., and
LOWENSTEIN and HANNA, JJ.

ULRICH, Judge.

This matter has a lengthy litigious history. Mrs. Lila Dian Stamatiou and Mr. Dimitri Stamati Stamatiou were married December 26, 1967, and divorced by order of the Clay County Circuit Court August 29, 1989. Mr. Stamatiou appealed, and this court remanded that portion of the decree dividing the property with directions. *In re Marriage of Stamatiou*, 798 S.W.2d 737 (Mo.App.1990) (Stamatiou I). On remand, the trial court awarded a chose in action to Mr. Stamatiou for recovery of missing coins and precious metal. Mr. Stamatiou appealed again, and the order distributing the marital property was affirmed as modified. *Stamatiou v. Stamatiou*, 827 S.W.2d 739 (Mo.App.1992) (Stamatiou II) Distribution of the marital property included awarding Ms. Stamatiou real property and the premises in which was located Greek Islands, a restaurant, and awarding Mr. Stamatiou El Greco Studios, Inc. (El Greco), the corporation that operated the restaurant business.

On January 16, 1990, Ms. Stamatiou filed a petition for Rent and Possession in the Circuit Court of Jackson County, Missouri, alleging that Mr. Stamatiou had failed to pay half the rental amount from the date of their separation in 1988 through the August 1989 Divorce Decree and that El Greco had failed to pay any monthly rent thereafter. Evidence in the rent and possession action indicated that the monthly rental amount owed by El Greco was $1,268. By an approved order signed by Mr. Stamatiou's counsel in his behalf and entered by the court on July 3, 1991, Mr. Stamatiou stipulated that the amount of the monthly rent owed by El Greco was $1,216.66. The trial court ordered El Greco to pay into an escrow account specified amounts of rent alleged to be in arrears and $1,216.66 per month during the pendency of the appeal pursuant to the property division in the dissolution proceedings. By joint stipulation, the rent and possession action was dismissed.

Ms. Stamatiou filed an unlawful detainer action on May 29, 1990; and on February 28, 1990, Ms. Stamatiou served Mr. Stamatiou and El Greco with statutory notice to quit, alleging that no written lease existed between El Greco and herself as owner of the real property and that any month-to-month tenancy would be terminated on April 1, 1990. Alternatively, Ms. Stamatiou gave notice that, while she disputed the validity of a purported lease, she had not been paid her half share of the rents due from the date of the Stamatious' separation through the date of the first decree and had not been paid any rent since the marriage was terminated in August 1989.

Prior to April 1, 1990, Mr. Stamatiou tendered a check to Ms. Stamatiou for $5,600. Ms. Stamatiou refused to accept this check, which Mr. Stamatiou claimed represented her share of the amount of rent due under the written disputed lease. The check tendered did not include Ms. Stamatiou's half share of the rent due from the date of sepa-

ration through the decree on August 29, 1989.

On July 10, 1992, following this court's mandate in *Stamatiou II,* the trial court entered its order dividing the marital property a second time. The trial court's original disposition of the real property and premises to Ms. Stamatiou and the full ownership of El Greco to Mr. Stamatiou in *Stamatiou I* was unaltered.

On July 29, 1992, the unlawful detainer court ordered El Greco to pay arrearage payments to Ms. Stamatiou for the months of July and August 1992. On September 3, 1992, the court in the unlawful detainer action entered judgment for Ms. Stamatiou finding no written lease agreement existed and holding that El Greco had failed to comply with the court's July 29, 1992 order to pay rental arrearage and ordering El Greco to pay twice the value of the monthly rents from April 1990 through August 1992 in the total sum of $70,566.25.

A new trial was granted on September 23, 1992, and judgment was filed on August 6, 1993, again finding no written lease existed between El Greco and Ms. Stamatiou. The judgment also ordered El Greco to pay $48,666.40 for the value of rents due from April 1, 1990 through August, 1 1993, and restored the premises to Ms. Stamatiou. From this judgment in the unlawful detainer action, El Greco appeals.

The judgment of the trial court is affirmed.

## I

■ As point one on appeal, El Greco alleges the trial court's finding that no written lease existed between Ms. Stamatiou and El Greco is against the weight of the evidence. Therefore, El Greco asserts that the judgment in favor of Ms. Stamatiou is in an invalid sum, exceeding the amount of the purported written lease.

The standard of review applicable to unlawful detainer actions is the same enunciated in Rule 73.01 and in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), for cases tried without a jury. *Kiefer v. First Capitol Sports Center, Inc.,* 684 S.W.2d 483, 487 (Mo. App.1984). Thus, the appellate court defers to the trial court's determination unless "there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy,* 536 S.W.2d at 32. Furthermore, the reviewing court considers the evidence in the light most favorable to the party prevailing below, "giving that party the benefit of all reasonable inferences and disregarding the other party's evidence except as it may support the judgment." *Morrison v. Jack Simpson Contractor, Inc.,* 748 S.W.2d 716, 718 (Mo.App.1988). Additionally, the appellate court gives due regard to the trial court's determination of the credibility of the witnesses. *Id.*

El Greco argues that Ms. Stamatiou has admitted the existence of a written lease between El Greco as tenant and the owner of the premises corroborating his claim that a written lease existed in the amount he claims. He asserts that Ms. Stamatiou filed, under oath, the action in rent and possession wherein she alleged the existence of a valid lease. Paragraph 3 of the rent and possession petition states

> [t]hat the Plaintiff [Ms. Stamatiou] and Dimitri S. Stamatiou did *lease* said property to El Greco Studios, Incorporated, d/b/a Greek Islands Restaurant, which Plaintiff and her former husband own. Pursuant to the decree of dissolution of marriage, said corporation now belongs to Dimitri S. Stamatiou. The Plaintiff and Dimitri S. Stamatiou did lease said property to El Greco Studios, Incorporated, d/b/a Greek Islands Restaurant for a rental payment of $1,268 per month prior to November 1, 1988.

(Emphasis added). However, in the context of paragraph 3, the word *lease* is a verb and merely alludes to the act of leasing the premises. As such, it does not constitute an assertion by Ms. Stamatiou of an underlying written lease.

■ El Greco also argues Ms. Stamatiou's alternative pleadings in the unlawful detainer lawsuit establish the existence of a written lease as El Greco claims. Count I alleges an at-will tenancy and Count II alleges the existence of a written lease. However, "alternative fact allegations made in good faith and

based on genuine doubt should not be considered admissions against interest." *Rauch Lumber Co. v. Medallion Dev. Corp.*, 808 S.W.2d 10, 12 (Mo.App.1991). The pleader is not admitting anything other than uncertainty when stating facts in the alternative. *Id.* If alternative fact allegations are not based on genuine doubt, however, they may be considered admissions against interest. *Id.* (stating that such a holding is consistent with Rule 55.03).

The evidence supports the position that Ms. Stamatiou was unaware of the existence of any current written lease until Mr. Stamatiou asserted its existence following Ms. Stamatiou's tendering a demand to the El Greco for $2,000 per month as compensation for El Greco's continued use of the property. She then obtained a copy of the purported lease from the Department of Liquor Control and noted that the "signature" on the photocopy of the lease did not appear to be hers. At trial, El Greco's expert testified that the signature on the lease appeared to be consistent with other versions of Ms. Stamatiou's signature. The expert also testified that her inability to observe the original copy of the purported lease affected her opinion. She admitted that the signature on the copy of the purported lease could have been a photocopy of a valid signature on another document.

Ms. Stamatiou doubted the validity of the lease filed with the Department of Liquor Control. The Director of Liquor Control testified that department policy allowed photocopies of leases to be submitted instead of originals and that the Department of Liquor Control did not conduct an independent investigation to determine the validity of signatures on leases submitted in support of applications for liquor licenses. While Ms. Stamatiou made application for renewal of the restaurant's liquor license in 1987, that application made no reference to the purported written lease. Thus, Ms. Stamatiou made a good faith allegation of an at-will tenancy in Count I of the unlawful detainer action now on appeal, but she pleaded the purported lease in Count II in the event the trial court would have upheld the validity of the disputed lease.

The trial court fully considered the evidence and found that no written lease existed. Sufficient evidence exists for the trial court's holding.

Point one is denied.

## II

As point two on appeal, El Greco claims Ms. Stamatiou wrongfully rejected its tender of $5,600 in rent as satisfaction for rent due and owing pursuant to the purported written lease. El Greco contends the written lease agreement provided for payment of $800 per month, $5,000 of which is payable on May 1st of each year. While the sole issue in unlawful detainer actions is the immediate right of possession, *S.L. Motel Enterprises, Inc. v. East Ocean, Inc.*, 751 S.W.2d 114 (Mo.App.1988), the court found no valid written lease existed. Since no valid written lease existed, El Greco's contention is without merit. El Greco asserts that a valid lease gave the corporation exclusive possession, and the tendering of $5,600 in rent was the proper cure for the rent in default pursuant to the purported lease. El Greco maintained lawful possession of the premises following termination of the written lease that ended on April 28, 1986. After termination of the fixed term in a written lease, if a tenant remains in the premises with some form of consent from the landlord, then the possession may ripen into a form of tenancy, at will (or by sufferance), usually for a month or more depending on the actions of the parties. *Kiefer*, 684 S.W.2d at 486.

On February 28, 1991, Ms. Stamatiou served Mr. Stamatiou, as agent of El Greco, with statutory notice to quit, alleging that no written lease existed and that any month-to-month tenancy would be terminated on April 1, 1990. Thus, the month-to-month tenancy was terminated at the conclusion of 30–days notice, and the trial court properly ordered that Ms. Stamatiou shall have and recover full restitution of the premises.

Point two is denied.

## III

El Greco's point three alleges that awarding $48,666.40 in rents due from the

time of the unlawful detention of the property in April 1990, through the judgment in the unlawful detainer action in August 1993 was erroneous because Ms. Stamatiou did not have sole right, title and interest to the real estate in question pursuant to a decree of divorce until all of the appeals were concluded and the final decree entered July 20, 1992.

El Greco construes § 452.360, RSMo 1994, to mean that the trial court's property division awarding Ms. Stamatiou the real property and premises where El Greco operated its restaurant business and awarding Mr. Stamatiou El Greco was not final until all appeals concerning any portion of the marital property were concluded. Consequently, El Greco alleges the trial court may not award rent to Ms. Stamatiou for the time period during which the initial property division granting her the premises was pending on appeal because the effect of the appeal following division of the property by the trial court was to transmute Ms. Stamatiou's exclusive ownership of the commercial property into a tenancy in common with her former spouse.

 *Unlawful detainer* is defined by § 534.030, RSMo 1994, as occurring

*[w]hen any person shall willfully and without force hold over any lands, tenements or other possessions, after the termination of the time for which they were demised or let to him or the person under whom he claims;* or when premises are occupied incident to the terms of employment and the employee holds over after the termination of such employment; or when any person wrongfully and without force, by disseisin, shall obtain and continue in possession of any lands, tenements or other possessions, and after demand made, in writing, for the delivery of the possession thereof by the person having the legal right to such possession, his agent or attorney, shall refuse or neglect to quit such possession, *such person shall be guilty of an "unlawful detainer."* (Emphasis added).

An action in unlawful detainer is a possessory action, and possession on the date the action is filed is an essential element of such a cause of action. *Cohn v. Missouri Termi-* *nal Oil Co.,* 590 S.W.2d 381, 382 (Mo.App. 1979). El Greco's possession of the property when the unlawful detainer action was filed is undisputed. The issue is whether Ms. Stamatiou was sole owner of the property when the suit was filed and entitled to the relief sought.

Section 452.360 reads in pertinent part:

1. A decree of dissolution of marriage or of legal separation is final when entered, subject to the right of appeal. An appeal from a decree of dissolution that does not challenge the finding that the marriage is irretrievably broken does not delay the finality of that provision of the decree which dissolves the marriage beyond the time for appealing from that provision, so that either of the parties may remarry pending appeal.

2. The court's order as it affects distribution of marital property shall be a final order not subject to modification.

In enacting § 452.360.1 the legislature intended that the part of the decree dissolving the marriage would become final by operation of law if it were not appealed, thereby allowing the parties to remarry even if other matters in the dissolution decree were appealed. *Fischer v. Seibel,* 733 S.W.2d 469, 472 (Mo.App.1987). Section 452.360.2, RSMo 1986, however, states that the order distributing marital property is a final order not subject to modification. The court in *Fischer* held, moreover, that the appellate court had no jurisdiction to decide questions regarding the division of property in the absence of a final order distributing all of the marital property. *Id.* at 472.

*Murawski v. Murawski,* 203 S.W.2d 714 (Mo.1947), states the rule when no order has divided the marital property and involves an action to partition between a former husband and wife when the trial court had not distributed the property upon dissolution of the marriage. The court stated that the effect of the divorce, in the absence of an order dividing the property, was to destroy the tenancy by the entirety and to create a tenancy in common. *Id.* at 715. Subsequent to this holding, however, Missouri has clearly stated

the impropriety of leaving property vested jointly in the parties after dissolution.

■ Since 1973, the Missouri Dissolution of Marriage Act has required the trial court to set aside to each spouse his property and to "divide the marital property in such proportions as the court deems just after considering all relevant factors." Section 452.330.1, RSMo 1994. The purpose of this statute is to minimize subsequent litigation and to accomplish "a complete severance of unity of possession and title to property between the spouses." *Fields v. Fields,* 584 S.W.2d 163, 166 (Mo.App.1979). Consequently, when the parties own property as tenants by the entirety, the dissolution court must seek a property division that will avoid the creation of a tenancy in common. *True v. True,* 762 S.W.2d 489, 490 (Mo.App.1988).

In *True,* the trial court intentionally created a tenancy in common as to jointly owned marital property. *Id.* The *True* court reversed the distribution finding that "unless there is some evidence which shows a necessity for continuing a tenancy in common, it is improper for the trial court to leave property vested jointly in the parties after a dissolution." *Id.*[1]

When § 452.360, is applied to the Stamatiou's first divorce decree, *Stamatiou I,* it establishes that Ms. Stamatiou had sole right and title to the premises from the date of the first decree. The order dividing the Stamatiou's property became a final judgment distributing all of the marital property; otherwise, the court of appeals would have lacked the jurisdictional power to review the judgment and the division of property.

■ The effect of appealing the judgment and division of the marital property was not to place the parties back in the position in which they were prior to the dissolution but

was to hold the property division in abeyance until the matter was resolved by appellate decision. Consequently, if husband and wife owned marital property as tenants by the entirety prior to dissolution of their marriage and the trial court divided the marital property, appeal from the judgment does not reinstate their ownership as tenants by the entirety. That appeal does not make them tenants in common by operation of law. The effect of appeal from the portion of the judgment dividing marital property did not change the parties' ownership interests or the form of ownership from that decreed by the trial court unless, and until, altered by appellate court mandate. When the trial court in *Stamatiou II* entered its judgment dividing the parties' marital property again pursuant to appellate court mandate, division of the property reverted back to at least the time the first division of property was entered.

Thus, when Ms. Stamatiou filed her complaint in unlawful detainer on May 29, 1990, the trial court had divided the marital property in *Stamatiou I* giving her all right and title to the commercial real estate upon which Mr. Stamatiou operated El Greco. She disputed the existence of the lease Mr. Stamatiou had produced and alleged that defendant corporation occupied the premises pursuant to an at-will tenancy, terminable upon the giving of thirty days notice. She had given written notice, including a letter hand delivered on February 28, 1990 to the corporation, stating that effective at the end of March 31, 1990 defendant's tenancy with respect to the premises would be terminated and that the corporation was to surrender and deliver possession of the premises on or before that date.

Section 452.360.2, states that the division of property by the trial court is a final order.

---

1. Interestingly, Mr. Stamatiou argued in one of his former appeals that the trial court's disposition of the premises to Ms. Stamatiou and the corporation to him was in contravention of the policy "to accomplish a total severance of possession and title between spouses and to place each former spouse in an independent and self-sufficient status." *Stamatiou v. Stamatiou,* 798 S.W.2d at 742. Now, El Greco argues that the effect of an appeal of the division of property where dissolution of the marriage was granted is

to transform the parties' status to that of tenants in common, citing cases in which the trial court had failed to divide the property pursuant to dissolution of the marriage. *Murawski v. Murawski,* 203 S.W.2d 714 (Mo.1947); *Tureck v. Tureck,* 207 S.W.2d 780 (Mo.App.1948). If such were the case, then Mr. and Ms. Stamatiou would have owned both the real estate and El Greco as tenants in common during the pendency of the appeal, and each would be entitled to a pro rata share of the rents and profits.

Thus, the dissolution court had vested title in Ms. Stamatiou at the time she filed her action in unlawful detainer. Assertion of her rights to the rent that was in arrears as well as her action to restore the premises to her possession was appropriate, pending appellate review. Furthermore, although Ms. Stamatiou filed her complaint in unlawful detainer on May 29, 1990, against El Greco, the trial court stayed its judgment in this action approximately 26 months until August 6, 1993, after the appellate process had been entirely exhausted and Ms. Stamatiou's title to the premises had been upheld.

Ms. Stamatiou sought relief in an unlawful detainer action. She did not seek "pre-termination" rent. She properly asserted her right to the damages available from April 1, 1990, the date the defendant corporation unlawfully detained the property.

Point III is denied.

### IV

As point four on appeal, El Greco complains that, by no fault of its own, it is effectively denied a fair trial because of unintelligible responses, improperly recorded statements, and omitted evidentiary proceedings in the record. El Greco acknowledged that the transcript was duly certified, and the corporation fails to state specifically which points were prejudiced by the alleged defective transcription.

Furthermore, El Greco asserts that several court appearances were not recorded and were unavailable for transcribing, including an appearance on February 13, 1991, a proceeding held on June 10, 1992, a hearing on June 14, 1991 and another proceeding held on July 29, 1992. The court's docket sheets reflect that February 13, 1991 was a docket call in which the cause was set for trial. The docket pages also reflect that on June 10, 1992, a letter was sent from the court to the attorneys about a counterclaim issue, and the case was set for trial. The sheet reflects that on July 29, 1992, the court entered an order for payment arrearage in rental deposits. Only June 14, 1991 does not appear on the docket sheet, but the record reveals a letter to Judge Aylward referencing a proposed Order, approved by counsel and mentioning a discussion in chambers on June 14, 1991, about the money Mr. Stamatiou was to pay into the court, as agreed, prior to July 8, 1991.

Rule 81.12 requires that the record on appeal contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent. However, "all evidentiary omissions in the record on appeal are presumed to support the trial court's decision." *Thomas v. Director of Revenue,* 874 S.W.2d 427, 429 (Mo.App.1994).

The untranscribed portions of the trial transcript bear on no issue of ultimate consequence to the questions presented on appeal, or merely represent responses, had they been audible, which are cumulative of material gleaned from other portions of the transcript.

Review of the briefs, the record, and the issues on appeal have in no way been impeded by the deficiencies of which El Greco complains. No basis exists upon which to remand the cause. This point is without merit because El Greco failed to demonstrate it was prejudiced in any way.

Point four is denied.

The judgment of the trial court is affirmed.

All concur.