Rhonda Nell **BASHORE**,
Petitioner/Appellant,

v.

Otis Frederick **BASHORE**,
Respondent/Respondent.

No. WD 35804.

Missouri Court of Appeals,
Western District.

Jan. 29, 1985.

Eugene G. Bushmann, Bushmann, Neff, Gallaher & Brown, Jefferson City, for appellant.

Susan Goering, Benson & McKay, Kansas City, for respondent.

Before CLARK, P.J., and SOMERVILLE and KENNEDY, JJ.

**CLARK, Presiding Judge.**

In this dissolution of marriage case, the wife appeals the orders of the trial court which awarded shared custody of the children and which determined that the family residence was the separate, non-marital property of the husband. The judgment is reversed and the cause is remanded for further proceedings.

The first issue raised in the appeal is the propriety and validity of the trial court's order regarding custody of the two children born of the marriage. The children are a son born in 1978 and a daughter born in 1981. As announced from the bench, the court made the following permanent custody disposition:

"With regard to custody of the children. There was no evidence presented that either party could not adequately take care of these children and puts the Court in a position of trying to choose when the only evidence I have is that both of you are equally capable of taking care of the children. Due to the fact that the evidence was you've been alternating the children on a weekly basis, *although I can't do joint custody since that has to be by agreement,* I have done what I

consider the next best thing in these circumstances; and that is that I'm going to alternate custody during the times that you have the children with you. Custody of the children named in the petition are awarded to petitioner every other week. Custody to the respondent, the alternate weeks when he has the children." (Emphasis added.)

Appellant contends in her first point on appeal that the divided custody order shifting the residence of the children from the home of one parent to the other every week is a judgment finding no support in the evidence and constituting a misapplication of the law.

At the time this case was tried and the judgment was entered, § 452.375, RSMo. Supp.1983 governed.[1] Under the statute, the trial court is empowered in a dissolution of marriage action to award joint custody of the children, sole custody to either parent or, if each is unfit, to a third party. The initial infirmity in the subject judgment is that it does not conform to any of the custody alternatives which the statute authorizes.

The comments by the trial court indicate the judgment in this case was not intended to be an award of joint custody. This follows from the court's observation, mistakenly conceived, that joint custody may only be ordered on agreement to that arrangement by the parties. Neither appellant nor respondent contends here that the alternating weekly custody change constitutes any concurrent participation by them in caring for the children nor was joint custody an option sought by either party in their pleadings or presentation to the trial court. Appellant's petition sought custody to be placed in her, respondent's cross-petition asked that sole custody be given to him and at trial, each of the parties reiterated the same claims. The divided custody arrangement decreed was a solution entirely devised by the court to meet the dilem-

---

1. Section 452.375 was amended to delete subsection 6 providing limitations on change of residence outside the state and to define joint legal custody and joint physical custody. Upon re-hearing in this case, the provisions of the 1984 statute will govern. Section 452.375, RSMo. Supp.1984.

ma, not alone found in this case, where the evidence does not strongly tip the scales in favor of either parent as custodian.

Under the statute, the court is obligated to provide for custody of minor children as a part of the dissolution of marriage decree. If joint custody is not awarded, the only alternatives remaining are placement of sole custody in either parent or in a third party. Here, the trial court disavowed the prospect of joint custody for want of agreement by the parties, but it failed to grant sole custody to either parent, or to a third party, the only remaining options under the statute. The decree giving appellant and respondent custody on alternate weeks therefore errs as a misapplication of the law.

Respondent in his brief here seeks to support the judgment as providing for "split custody" and cites as an example of previous decrees to this effect which have been approved, *Gillespie v. Gillespie*, 590 S.W.2d 420 (Mo.App.1979). The *Gillespie* case, and others cited, are of no aid in salvaging the decree here because in each, there was a sole award of custody with liberal, specified periods of temporary custody for purposes of visitation. No case cited by respondent or discovered by independent research has approved a custody decree which grants neither joint nor sole custody.

A further defect in the custody award in this case is an absence of any apparent consideration by the trial court of the best interests of the children or of any evidence to support the disposition ordered. It is axiomatic to say that custody is not to be a reward or punishment of either parent, but is to be based on the ultimate and sole test of what will be in the best interests of the children. *Knoblauch v. Jones*, 613 S.W.2d 161, 165 (Mo.App.1981). Generally speaking, except for good reason, a minor child should not be shifted periodically from one home to another. It is unwise to transfer custody frequently and not at all unless it is demonstrated by a preponderance of the evidence that the continued well-being of the children requires the change. *Leimer*

*v. Leimer*, 670 S.W.2d 571, 574 (Mo.App. 1984).

Appellant contends that the weekly custody shuttle was not shown by any evidence here to be in the best interests of the children but, instead, is detrimental to their welfare. The failure by the trial court to mention in its findings how the custody as ordered served the children's interests leaves the order inherently vulnerable and suspect because of its terms. Those provisions leave the children as weekly transients having no permanent home at the residence of either parent. The consequences are predictably to be confusion and instability. It would be an exceptional case in which deference to the trial court's discretion would warrant affirmance of an alternating weekly custody disposition and then, only on a record in which evidence showed that disposition to be in the best interests of the child. Here, absent any evidence supporting the decree, deference is not to be accorded.

Because of the necessity to remand this case for a rehearing and the prospect that joint custody may be an alternative considered by the trial court, some observations as to that option under the evidence adduced to this point is appropriate. The following facts appear in the record and constitute circumstances unlikely to change when the case is again heard.

The parties were married in 1975 and, after a previous separation, the wife finally left the family home in June, 1982. She took the children who were thereafter with her in her sole care until an unspecified date in 1983. The husband paid no child support, as such, from the date of separation to the date of trial. He did make payments on the joint debts of the parties and, in 1983 when the wife submitted to the alternate weekly custody arrangement, the husband assumed one-half of the day care charges for the children incurred because both the wife and husband were regularly employed outside the home. The wife testified that the alternate weekly custody plan was accepted by her as a matter of economic necessity.

The evidence produced at trial discloses two major grounds of disagreement leading to a breakdown of the parties' marriage. The first was a difference in religious faith and practice. Appellant testified that she was a member of the Baptist Church but she acknowledged no more than sporadic attendance. Church related activities were quite apparently of minimal significance in appellant's life. Respondent, however, was an active member of the Assembly of God Church, he attended at least three church services each week and contributed more than 10% of the family's income to the church. Appellant disagreed with respondent's extensive involvement with the church and his commitment of the family resources to church donations.

The second ground of difference lay in the matters of lifestyle and discipline. Appellant enjoyed evening recreation, which she apparently pursued independently, and she was less restrictive in her views as to control over the children. Respondent, to the contrary, is as he testified, a "home person" less interested in outside affairs and strict in his view of the discipline to be imposed on the children.

The divergence in the parties' attitudes on these subjects widened as the marriage deteriorated and continued after the separation. There is no evidence in this record supporting any prospect for agreement between the parties on decisions involving religious training and discipline of the children.

In this case, joint custody was and apparently is not a disposition which either party seeks. It is also one which is unlikely to succeed because the parties have not shown an inclination or ability to cooperate in important matters affecting the rearing of the children. While the statute does not in express terms condition an award of joint custody on the agreement of the parties, the plan is obviously foredoomed if it is imposed against the wishes of both parents and in the face of expressed parental disagreement on fundamental issues of religious doctrine and child discipline.

The custody award in this case is not supported by substantial evidence and misapplies the law, *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) and it is reversed.

■ The second point presented in the case concerns disposition of the family residence. According to the judgment, the court found the property to have been acquired by the husband prior to the marriage and therefore set it apart as the husband's separate property. Concurrently, the court found the wife to have contributed to mortgage payments on the house and the decree awarded her $1650.00, "as her share of the equity in the home." Appellant contends there was no substantial evidence supporting the conclusion that the home was separate property but, to the contrary, the evidence was that the residence was marital property.

The facts applicable to this phase of the case are that in April, 1975, appellant and respondent opened a bank account in their joint names. Although no date had been set, they contemplated marriage. Both made deposits to the account, the amounts not being shown in the evidence, and both were entitled to draw on the account. In May, 1975, respondent drew a check on the account to purchase a building lot. Title was taken in his name alone. Thereafter, respondent procured an FHA loan and had a residence built on the lot. Before final inspection and closing of the loan, the parties were married. On the final mortgage loan documents, appellant and respondent jointly obligated themselves for repayment. The home was occupied from the date of the marriage to the date of separation as the family residence, but respondent never added appellant's name to the title. During the marriage, appellant and respondent continued to deposit money in the joint account and to make the mortgage loan payments from the account. The evidence was in dispute as to whether respondent told appellant he had placed the title in joint names. Appellant, however, had assumed her name was on the title and only

learned it was not when the marriage dissolution case disclosed that fact.

The trial court declared the residence to be non-marital property and set it over to the husband on the basis of the acquisition of the lot prior to the marriage and the maintenance of record title throughout in the name of the husband. This decision applied the "inception of title" theory to distinguish between marital and non-marital property, a concept regularly recognized in the reported cases. *Busby v. Busby,* 669 S.W.2d 597 (Mo.App.1984). These cases were, however, overruled by *Hoffmann v. Hoffmann,* 676 S.W.2d 817 (Mo. banc. 1984).

In *Hoffmann,* the court reviewed the two major theories used in determining whether property is, under statutory terminology, acquired prior to the marriage and is thus separate property. Under the title theory, property is classified as of the date title passes and if one spouse obtains the title before the marriage, the property remains separate even though marital funds may later be spent to improve the property or reduce a mortgage debt. The *Hoffmann,* opinion rejects this theory as one not previously approved by that court and adopts instead the "source of funds" theory.

Under this rule, the character of the property is determined according to the source of the funds which finance the purchase. Thus all property on which marital funds are expended is marital property regardless of the date of acquisition and status of title. So, too, is the increase in the value of such property subject to division because its reclassification eliminates the constraint of § 452.330.2(5), RSMo.Supp. 1983.

In the present case, applying the controlling authority of *Hoffmann, supra,* the family residence is marital property and must be divided between the parties based on the four factors set out in § 452.330.1, RSMo.Supp.1983. This follows because appellant's funds contributed to acquisition of the asset, first by payment from the joint bank account to purchase the building lot and second, by the use of marital funds for mortgage reduction payments. The fact that respondent's name alone appears on the record title is irrelevant.

The judgment is reversed as to the decrees of child custody and property division and the cause is remanded for additional evidence and redetermination of the child custody and property division issues.

All concur.