**Layla Shaker MISDARY,
Petitioner-Appellant-Cross-Respondent,**

v.

**Abdel Misseh MISDARY,
Respondent-Respondent-Cross-Appellant.**

No. 51904.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 15, 1987.

John C. Maxwell, St. Charles, for petitioner-appellant-cross-respondent.

Charles R. Schroeder, St. Peters, for respondent-respondent-cross-appellant.

REINHARD, Judge.

Mother appeals after the trial court denied Count I of her petition in which she asked the court to set aside a California dissolution decree allegedly procured by fraud, dismissed as moot Count II of her petition in which she sought legal separation, and granted a portion of her request in Count III for child custody, child support, maintenance, distribution of marital property, and attorney fees. Father appeals from that portion of the order requiring him to pay mother's attorney fees. We affirm as modified.

Mother alleged in Count I of her petition that she and father were citizens of the Arab Republic of Egypt and were permanent resident aliens legally entitled to reside within the United States of America. She alleged they were married in Cairo, Egypt, on February 11, 1973; that they lived together as husband and wife until 1980 when father moved to the United States; that she moved to the United States with their two minor children on March 5, 1985, at the request of father; that on September 22, 1982, the marriage of the parties was dissolved by the Superior Court of California, County of Los Angeles; that after leaving Egypt father had told mother that he would be sending for her and the two children and that, at some time in the fall of 1981, he called her and told her that "immigration papers were forthcoming and that upon her receipt ... she should sign the papers, which papers would permit her and the minor children to travel to the United States of America"; that she does not read or write English; that on or about December 10, 1981, she received a "Petition for Dissolution with summons," and, in reliance upon father's representation that her signature was required on "immigration papers," she signed the return receipt which was forwarded to the California court; that father knew his representations were false and that she relied upon them that the California dissolution decree was "fraudulently obtained." Therefore, she requested that the decree be set aside.

In Count II she alleged, among other things, that she and father "separated and ceased living together as husband and wife in 1980," and requested that the court grant her a legal separation. In Count III she requested, if the court denied the relief she sought in Count I, that it divide "the property of the marriage," award her custody of the children, and order father to pay child support, maintenance, and her

attorney fees because the California court did not have personal jurisdiction over her.

The trial court heard the case in January 1986 and entered its order finding against mother on the fraud claim. The court declared Count II, mother's claim for legal separation, moot because of the ruling on Count I. As to Count III,[1] the court, having found that the California court lacked jurisdiction, awarded custody of the 12-year-old son and 11-year-old daughter to mother with temporary custody to father on alternate weekends, alternate major holidays, and two weeks in the summer. The court ordered father to pay $88.50 per child per week as child support, $56.00 per week as maintenance, and mother's attorney fees of slightly more than $8,000.00. The trial court order is silent on the matter of division of marital property.

Mother raises four points on appeal. She alleges that the court's ruling on the fraud claim is not supported by substantial evidence and is against the weight of the evidence; that the awards of child support and maintenance were against the weight of the evidence in light of the needs of mother and children and father's ability to pay; that the court erred in restricting evidence of father's marital misconduct to that which occurred prior to 1980, the date of separation as set forth in mother's petition; and that the court erred in failing to divide the marital property. Father contends that the trial court erred in the amount of mother's attorney fees he was ordered to pay.

■ At least some of the facts are undisputed. Father and mother were married in Egypt in 1973 and two children were born of the marriage. Both are citizens of Egypt and both worked there. When father came to the United States in 1980, mother continued to work in Egypt and retained custody of the children. In October 1983, father returned to Egypt for a short visit. Father filed his petition for dissolution of marriage in Los Angeles in December 1981. A summons with a copy of the petition was mailed to mother in Cairo, Egypt, and the return receipt containing mother's signature was filed with the California court on January 15, 1982. Mother defaulted and the California court dissolved the marriage. After the dissolution in September 1982, father executed various documents indicating that mother was his wife, including federal and state income tax returns for the years 1982 through 1984 and an affidavit of support in October 1983 to enable mother and the children to obtain immigrant visas. Father began working for General Motors in California in 1981, moved to Missouri in the fall of 1982, and began working at the GM plant at Wentzville in November 1982. He purchased a house at Lake St. Louis in September 1983 with the title to the property in his name alone.

In February 1985, mother talked to father by telephone and told him that she and the children were coming to the United States. He discouraged her, telling her he was going to Canada. Not dissuaded, mother flew to this country with the children and, upon their arrival in New York, she telephoned father. He then met them at the St. Louis airport and took them to his home at Lake St. Louis. Father did not stay at the house while mother and the children were there. She said he told her he slept at work; he testified he stayed at his fiancee's home. At the Lake St. Louis house, mother found photographs of other women, letters and greeting cards from women, cosmetics, women's clothing, birth control pills, and what appeared to be a marriage certificate for father and another woman.

Mother testified that she was unaware of the dissolution until she arrived at Lake St. Louis. Father stated that he and mother separated in Egypt in 1978 and that he lived with a cousin from 1978 until 1980. He said that before he left Egypt he and mother talked about getting a divorce and, in 1980 after he arrived in the United States, he told her over the telephone, "We're getting a divorce. I can do it from here and we can get divorced." He stated that she was notified that the marriage had

1. In its order, the trial court refers to Count II.

been dissolved, that she knew of his remarriage, and that he signed the immigration documents stating that she was his wife solely for the purpose of permitting her to bring the children to the United States for a visit and that she was a party to the scheme. He said that her name was on the income tax returns because the preparer made a mistake.

Mother admitted that the airline tickets to the United States were for a round trip and that she took a two-year leave of absence from her job "to take care of the children."

According to the parties' income and expense statements, mother had no income, no property, and monthly living expenses of $2,302.00 for her and the children. Father showed gross income of $1,000.00 per week including overtime. He testified his pay rate at the time of the trial was $15.00 per hour plus 10% for working the third shift. He stated, however, that in 1984 his income was $56,000.00 and in 1985 it was $65,000.00. During both years he had extensive overtime. An employee of General Motors testified that father would have little or no overtime in the future. Father claimed $4,220.00 as average monthly expenses including "rent or mortgage payments" of $750.00 and $450.00 and living expenses for "children in your custody" totalling $700.00. He listed assets of $109,-700.00 and debts of $77,854.00.

At the time of the hearing, mother was living in an apartment in O'Fallon for which she was charged rent of $345.00 per month. She did not have a job, could not speak English, and did not understand written or spoken English. A tutor from a church was attempting to teach her the language.[2]

With the above undisputed and disputed factual background in mind we consider the parties' points and apply the standard of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976) that a judgment will be upheld if it is supported by substantial evidence, is not against the weight of the evidence, and is not based on an erroneous declaration or application of the law. We give due regard to the trial court's ability to judge the credibility of the witnesses. *In Re Adoption of W.B.L.*, 681 S.W.2d 452, 455 (Mo. banc 1984). Furthermore, where, as here, no findings of fact have been requested and none made, all controverted facts are considered found in accordance with the result reached. *Freeman v. Taylor*, 620 S.W.2d 1, 2 (Mo.App.1981).

The trial court did not err in failing to set aside the California dissolution decree because of the alleged fraud. In Missouri a judgment of a sister state is subject to challenge for, among other reasons not applicable here, "fraud in the concoction of the judgment." A party asserting the invalidity of a foreign judgment has the burden of overcoming a presumption of validity, unless the proceedings show on their face that the judgment is not entitled to that presumption. *Scott v. Scott*, 441 S.W.2d 330, 332–33 (Mo.1969).

In her brief mother states,

If the Trial Court in the instant case was faced with only the contradictory testimony of the parties concerning the circumstances under which the California divorce papers were forwarded to [mother] and returned to the Los Angeles court, [mother] would concede that the Trial Court did not abuse its discretion in ruling against [mother] in Count I of the petition.

Mother, however, contends that our determination of this point does not turn solely on the credibility of the testimony, but must take into account documentary evidence including the affidavit of support signed by father and letters written to mother after service of process in the California proceedings in which father used such phrases as "My dear wife, Layla," "Your husband, your honest husband," and "I hope we'll be together soon."

In light of father's testimony that mother knew he had filed for and obtained a divorce, his explanation about the affidavit of support for immigration purposes and

---

2. A language interpreter at the trial translated questions to mother into Arabic and her answers into English.

the income tax returns, and the trial court's ability to determine the credibility of the testimony, we cannot say that mother's documentary evidence was sufficient to have required the court to have found as a matter of law that there was "fraud in the concoction" of the California decree. We rule point I against mother.

The second count of mother's petition is moot because of the trial court's ruling on Count I and our disposition affirming the trial court's denial of her fraud claim. There is no basis for granting legal separation because the marriage was dissolved in California in 1982. However, we remain confronted with Count III of mother's petition, the alternative count for maintenance, child custody, child support, division of property, and attorney fees.

Mother claims that based upon father's evidence that he earned $65,000.00 in 1985 and her evidence that her reasonable monthly needs were $2,302.00, the awards of maintenance in the amount of $56.00 per week and child support in the amount of $88.50 per child per week were against the weight of the evidence.

Father's *entire* argument on this issue is as follows:

At the time of the hearing [father] was working no overtime and was earning $15.00 an hour plus 10%.

The award of the court was certainly not an abuse of discretion. In addition [mother's] testimony regarding her expenses are not to be believed. [Mother] testified that she pays $100.00 per month for a phone but she didn't have a phone; that she spent $100.00 per month for gasoline and oil, but she didn't have a car; that she had a car payment of $250.00 per month, but she doesn't have a car; [mother] didn't know how much she spent for clothes or medical expenses.

In mother's income and expense statement she showed the specific needs of the children to be $870.00 excluding general household expenses such as rent and utilities; the court award amounts to $383.50 per child per month. Mother listed her specific expenses as $380.00 per month, excluding general household and transpor-

tation expenses. She listed monthly rent of $300.00; utilities, including telephone, of $300.00 a month; automobile expenses of $380.00 per month; and life, health, and accident insurance expenses of $22.00 a month.

■ We find no error in the child support allowance but believe the court abused its discretion in the allowance for maintenance. The trial court shall determine the amount of maintenance "after considering all relevant factors" including seven specified ones. § 452.335.2, RSMo 1986. Although the trial court is given broad discretion in awarding maintenance, if an appellate court believes that the trial court abused its discretion, it is obligated to enter the judgment the trial court should have entered. *In re Marriage of Runez*, 666 S.W.2d 430, 433 (Mo.App.1983). From our review of the record, we conclude that the maintenance award here is inadequate, and at least $150.00 per week should have been awarded. Mother does not read, speak, or understand English. She has no property and no income from any source; she has no job. Her projected expenses for her food, clothing, recreation, laundry and cleaning, electricity, and telephone are less than those projected by father for his similar needs. Although mother has no car, she has transportation needs. The record fully justifies a minimum amount of maintenance of $150.00 per week in addition to child support of $88.50 per child per week. The maintenance award is hereby modified to increase maintenance to $150.00 per week.

■ Mother also contends the court erred by not dividing marital property because "Section 452.330 RSMo 1986 requires a division of marital property 'in a proceeding for disposition of property following dissolution of marriage by a court which lacked personal jurisdiction over the absent spouse.'" In other words, mother claims that the court, after denying her motion to set aside the California decree, should have, in accordance with her request in Count III, divided the marital property that the parties owned at the time of the California decree.

A court may, under certain circumstances, divide marital property that a court

dissolving a marriage failed to divide. § 452.330.1, RSMo 1986. Because the thrust of mother's case was that the California court did not dissolve the marriage, much of the evidence dealt with property acquired after the California decree. There was evidence that father had some personal property at the time of the California proceedings, some of which had been acquired by gift. There was no evidence about whether the property was encumbered by any debt. There also was evidence that mother had some property in Egypt at the time of the divorce proceedings, but there was no evidence about the value of that property.

In a proceeding asking a Missouri court to distribute marital property owned at the time of a dissolution granted by a sister state, the burden is on the petitioner to prove the existence and value of the marital property. It appears to us that it would have been impossible for the trial court to have made a fair distribution when it was not presented with evidence about all the alleged marital property. Under these circumstances, mother failed in her burden of proof and we cannot say the trial court erred.[3]

The court ordered father to pay in excess of $8,000.00 in mother's attorney fees. We have examined the record and find no abuse of discretion on the part of the trial court; we deny father's appeal.

The judgment of the trial court is modified to increase the award of maintenance to mother to $150.00 per week. In all other respects the judgment of the trial court is affirmed. Costs are taxed against father.

Judgment affirmed as modified.

DOWD, P.J., and GARY M. GAERTNER, J., concur.

---

3. Mother's other point concerns alleged error by the trial court in restricting evidence of father's marital misconduct to that which occurred prior to 1980, the year father left Egypt and the year of separation according to mother's petition. In light of our conclusion that the trial court did not err in failing to divide marital property, we need not discuss the issue of father's alleged marital misconduct.