Suzette M. CUDA, Respondent,

v.

Frank A. CUDA, Appellant.

No. WD 50001.

Missouri Court of Appeals,
Western District.

July 25, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 29, 1995.

Application to Transfer Denied
Oct. 24, 1995.

J.C. Hambrick, Jr., Kansas City, for appellant.

Deborah D. Conklin, Gladstone, for respondent.

Before KENNEDY, P.J., and SMART and LAURA DENVIR STITH, JJ.

KENNEDY, Presiding Judge.

Wife and Husband were married July 20, 1988. Wife filed suit for dissolution of the marriage September 10, 1992, and the decree was granted August 9, 1994. They have two children, the first born July 25, 1988, and the second born April 7, 1990.

While they were living together before their marriage, a period of four or five years, they purchased a residence. They took title in their joint names. The down

payment of $13,150 was paid by Husband from separate funds, although Wife contributed to the closing costs from her funds. They were still living in this house at the time of the separation. The court found the value of the house to be $132,500; it was subject to a mortgage of $88,050.96. The house was adjudged to be marital property and it was awarded to Wife.

The husband's complaint on appeal is that the court "failed to recognize" husband's "separate contribution" to the purchase of the house.

We have concluded that the trial court was not in error to treat the house as marital property. It is true, as husband points out, there was no evidence that the house was purchased "in contemplation of marriage." Citing *Colborn v. Colborn*, 811 S.W.2d 831, 834 (Mo.App.S.D.1991), husband argues that property acquired by co-habiting parties becomes marital property only if it was acquired in "contemplation of marriage." Here, although husband made the $13,150 down payment from separate funds, the title to the property was taken in their joint names. Wife thus succeeded to an equal joint interest with husband by gift. *Tracy v. Tracy*, 791 S.W.2d 924, 927–28 (Mo.App.S.D. 1990); *In re Marriage of Smith*, 785 S.W.2d 764 (Mo.App.E.D.1990). Wife and husband together signed the promissory note for the balance of the purchase price. Wife's contributions contributed to pay the monthly mortgage payments from that time until the marriage and, after the marriage till the divorce, and assisted in the maintenance and the improvement of the house throughout that time.

■ Before the marriage, the house was simply joint tenancy property. When they married, the joint tenancy property took on the additional character of marital property.

In the *Colborn* case, relied upon by husband, there was no evidence that the husband, during the period of pre-marital cohabitation, ever recognized the wife as equal co-owner with him of the disputed property— and, in fact, specifically rejected any claim by wife upon the disputed property (a partnership interest in a dairy operation). That is a far cry from the present case, where the husband expressly bestowed upon the wife a joint tenancy interest in the real estate acquired before marriage. See *Tracy*, 791 S.W.2d at 927. The evidence also indicates that the relationship was intended by the parties to be a counterfeit of marriage, in the melding of their financial affairs and the sharing of responsibilities and resources. In *Colborn*, on the other hand, the parties seemed to maintain a wall of separation between their respective resources.

We see no error in the trial court's calling the house marital property. Husband does not complain of the decree's awarding the house to the wife if it is to be considered marital property.

■ 2. During the co-habitation and the ensuing marriage of the parties, they bought a substantial amount of personal property, including furniture and furnishings for the house. Husband complains that the court did not recognize his own non-marital funds which went into these purchases, but designated it all as marital property. However, wife maintained that her funds contributed substantially to the acquisition of the property, and they acquired them, and treated them, as communal property. Where the parties continually commingle marital assets and earnings, and treat property as communal, separate property may be transmuted into marital property. *Feinstein v. Feinstein*, 778 S.W.2d 253, 261 (Mo.App.E.D. 1989). Non-marital property may lose its character as such if there is evidence of an intent to contribute the property to the community, *True v. True*, 762 S.W.2d 489, 492–93 (Mo.App.W.D.1988).

■ 3. Husband complains of the court's designation of his stock in a corporation named Cuda & Chambers, Inc., as marital property.

Cuda & Chambers, Inc., owned and operated a restaurant named Donovan's Sports Cafe. Husband owned 50 percent of the stock in the corporation. His parents owned the other 50 percent. The business started in 1984.

Husband had this stock before his marriage to wife, and before even his cohabitation with wife. Wife had no connection with

the business, other than to work there as a cocktail waitress and manager from time to time and some periodic work done from their home. For this work she usually received wages.

The trial court held that husband's 50 percent interest in the corporation was marital property, and that husband's interest had a value of $50,000.

Husband complains of the court's marital property designation of his interest in the corporation. The stock was awarded to husband at a value of $50,000.

Wife's justification for the marital property designation is that Husband's stock increased in value during the marriage from zero to $50,000. At the time of the marriage (July 20, 1988) the business was in Chapter 11 reorganization and therefore, as she argues and as the court implicitly found, worth nothing. She argues that the entire value of Husband's stock became marital property.

■ The seminal case of *Hoffmann v. Hoffmann*, 676 S.W.2d 817 (Mo. banc 1984), has much to teach us about this case. *Hoffmann* recognizes the principle that marital labor and marital funds may enhance the value of property acquired by one spouse before the marriage, and that, to the extent that the marital labor and marital funds contribute to the increase in value, it becomes marital property.

The same deficiencies in the wife's proof in *Hoffmann* defeat wife's claim in this case that the husband's stock in Cuda & Chambers, Inc., became marital property in the present case. Husband was paid a salary for his services to the corporation. "The wife has failed by any proof to establish the value of the husband's services to the corporation or that he had indeed sacrificed payment of marital funds, by way of salary or dividends in order to increase the value of the corporations's stock. It would require substantial speculation to conclude that the stock's value had appreciated in any amount due to the husband's forsaking marital property compensation for his services." *Hoffmann*, 676 S.W.2d at 826.

There was a time, around the time of the marriage, when the business was having financial difficulties and husband was unable to cash his paychecks. This condition seems to have been temporary, for the business was doing well by the time of the dissolution proceeding. Husband's pay at the time of the dissolution proceeding was $3,033 per month.

Neither were the wife's contributions to the business extensive enough to justify giving her a share in her husband's corporate stock. She did work for the corporation, but so far as we are able to tell from the record she was always, or usually, paid for her services. If she rendered more services than she was paid for, the evidence fails to give any measurement in value or time by which her contribution to the increased value of the business could be assessed.

We are constrained to hold, under *Hoffmann* and under *Meservey v. Meservey*, 841 S.W.2d 240 (Mo.App.W.D.1992), that the court erred in designating husband's stock in Cuda & Chambers, Inc., as marital property.

■ 4. Husband argues that the court erred in assigning to him for payment three promissory notes, signed by himself alone, totalling $83,500—two of them signed before the marriage, and one (for $20,000) signed during the marriage. All the notes were payable to husband's father and mother. (Actually, the decree does not mention the two earlier notes, totalling $63,500. It designates the $20,000 note as a marital debt, and assigns it to husband for payment.) As we understand husband's argument, it is only, or principally, that these were obligations incurred for the acquisition of the stock or the financing of the business operations—and that, if the corporate stock is held to be marital property, wife should not be relieved of any obligation to contribute to payment of the indebtedness. Since we have held that the corporate stock is not marital property, but is the separate non-marital property of husband, husband has no grounds for complaint about having the indebtedness to pay.

■ 5. Husband says the court erred in failing to dispose of wife's 401(k) plan, which at the time of the separation amounted to approximately $3,000, and a marital bank account of $1,665, both of which wife had

appropriated after the separation. These funds had been used up by the time of the hearings in the dissolution case. Wife had used them for living expenses for herself and the couple's two children, and for school expenses, after she had lost her job at Worldspan (when it moved its place of business away from Kansas City) and had entered nursing school. The court was not in error in failing to dispose of these funds.

■ 6. Husband complains that the court fixed child support on the basis of his income alone. Husband's income was $3,033 per month, and the support award for the two children was $1,073 per month. Wife had no income, but husband says the court should have imputed income to her. Wife, as noted above, had entered nursing school after losing her job at Worldspan, where she was making $10.60 per hour. She testified she could get a job when she finished school for $10 or $15 per hour, or so she had been informed. She would complete school August 2, 1994. The trial of the case concluded July 6, 1994, and the decree was entered August 9, 1994.

■ The court was not in error in using the husband's income alone, without attributing income to wife. Where a spouse is unemployed or underemployed, the court may attribute income to that spouse, but it depends upon circumstances. *Stanton v. Abbey*, 874 S.W.2d 493, 499 (Mo.App.E.D.1994). Here, the wife was preparing herself to make her living and to contribute to the support of the children. The court was within its discretion in using husband's income alone.

Since the case will have to be remanded for reconsideration of the marital property distribution, the court may at the same time consider the child-support issue in the light of changing conditions since the last hearing.

■ 7. Husband complains of the exclusion of certain alleged tape-recorded evidence of telephone conversations between wife and male friends, which are represented by husband to have shown sexual and criminal misconduct on her part. We are unable to tell what these tapes might have revealed more than wife's own cross-examination testimony revealed. The tapes, and the transcript of one of the tapes, have not been included in the record which husband has filed here. Without those, we are unable to review this allegation of error. *In re Marriage of Kohler*, 778 S.W.2d 19, 21 (Mo.App. E.D.1989).

■ 8. Husband complains of the court's requiring him to pay wife's attorney's fees of $13,000 and the guardian ad litem's fee of $3,500. We have reviewed this allegation of error, and find that the trial court was within its discretion in making these awards.

The re-designation of husband's corporate stock as non-marital property—thus removing $50,000 from the marital property to be distributed—may require some adjustment of the distribution of marital property (although not necessarily so) in the discretion of the trial court. We therefore remand for reconsideration of that portion of the dissolution decree. The court may allow the parties to produce evidence of developments since the last hearing on July 6, 1994. The court at the same time may reconsider the child support in the light of the current circumstances of the parties.

Judgment affirmed in part and reversed and remanded in part for further proceedings.

All Concur.