**Janet Leta BECKHAM, Respondent,**

v.

**Charles R. BECKHAM, Appellant.**

**No. WD 58405.**

Missouri Court of Appeals, Western District.

April 3, 2001.

Sharon M. Westhoff, Harrisonville, for appellant.

Kevin K. Anderson, Harrisonville, for respondent.

Before ELLIS, P.J., LOWENSTEIN and BRECKENRIDGE, JJ.

LOWENSTEIN, Judge.

Husband appeals from a dissolution judgment, arguing that the trial court erred in determining that his separate property was commingled with marital property and in failing to divide the land and marital home according to the parties' contributions.

## Factual and Procedural History

This dissolution of marriage case is between Charles R. Beckham (Appellant), who is retired from the Missouri Highway Department, where he was an inspector for bridge construction (though he still works from time to time as a contractor), and Janet Lea Beckham (Respondent), a caregiver who earns $8 per hour.

The parties became engaged to be married in July of 1986. Shortly thereafter, Appellant sold a home he had from a previous marriage. On September 10, 1986, Appellant made a down payment of $20,000 on thirty-five acres of unimproved land, he testified, in "anticipation" of the marriage. This land was titled solely in Appellant's name and still is. The down payment was in part from proceeds of the sale of Appellant's first home and in part from his savings in a credit union. On September 11, 1986, Appellant executed a Deed of Trust from a local bank, encumbering the acreage with a construction loan of $45,000. There is some dispute as to whether this initial loan was incurred solely by Appellant or jointly by both parties, though an unsigned application containing both parties' names was admitted at trial.

Near the beginning of November of 1986, Appellant moved into rental property occupied by Respondent and her two teenaged children, and the parties were married November 21, 1986. In March of 1987, Appellant and Respondent converted the original $45,000 construction loan to a $60,000 loan because of unforeseen expenses. Both parties signed to be responsible for the $60,000 debt, which replaced entirely the original $45,000 debt. In addition, Appellant placed approximately $30,000 from the sale of his non-marital home into finishing the new residence (construction, appliances, carpeting, furniture), though the record is unclear as to whether he contributed this amount before or after the couple married. The parties, Appellant in particular, also put in a great deal of "sweat equity." Appellant drew up plans, worked with contractors and did some of the construction labor himself or with friends. Respondent was responsible for some of the painting.

The parties moved into the marital home in June of 1987. Appellant testified that the real estate was purchased with the anticipation that the couple would marry and build a home. Had he not met Re-

spondent, he testified, Appellant planned to stay in the home of his first marriage.[1]

Appellant also testified that during the marriage, both parties made payments on the $60,000 deed of trust. There was also evidence that although Respondent kept a checking account in her name only, the parties had an additional checking account in both of their names from which payments on the deed of trust were paid. From her own checking account, Respondent paid the telephone bills and purchased groceries and all the personal items and sundries used in the home. Appellant paid all of the other utility bills.

The parties separated in April of 1998 and filed for divorce in May of 1998. Respondent testified that early in the marriage, Appellant was physically abusive and that he was mentally abusive ("controlling and intimidating") throughout the marriage.

Relevant to this appeal, the trial court found that the thirty-five acres and the house were commingled,[2] and that in the division of this marital property, each party was entitled to fifty percent of that property (though Appellant had the right of first refusal). Appellant asserts that the trial court erred first in determining that the acreage and house titled solely in Appellant's name were commingled and second in failing to divide the land and house according to the contribution of the parties pursuant to § 452.330.1, RSMo. Supp.1998.[3]

## Standard of Review

The trial court's decision in a dissolution of marriage action will be affirmed unless there is no substantial evidence to support the decision, the decision is against the weight of the evidence, or the decision erroneously declares or misapplies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). "The party challenging the dissolution decree has the burden of demonstrating error." *Taylor v. Taylor,* 12 S.W.3d 340, 344 (Mo.App. 2000). This court views the trial court's findings in the light most favorable to the trial court's decision. *Id.*

"A trial court possesses broad discretion in identifying marital property." *Absher v. Absher,* 841 S.W.2d 293, 294 (Mo.App.1992). When characterizations of property as marital or separate rest on an

---

**1.** Appellant's specific testimony is as follows:
Q: When you—When you purchased that real estate, however you purchased it, it was purchased with the anticipation of you and her were going to get married and build a home?
A: Yes.
Q: Prior to meeting Ms. Beckham and deciding to get married, your plans were to stay on Eastwood Road here in Harrisonville?
A: Correct.
Q: And after it became obvious, in fact, you gave her an engagement ring in July of that year, did you not?
A: I don't know. I can't answer that. I do not know. I can't recall the date.
Q: But do you recall that you were engaged and were going to get married in September of 1986 when you bought that 35 acres?
A: I guess.

Q: And you and her went and looked at it together?
A: Yes.
Q: And you and her talked about it and decided this was where we [sic] would build our house; is that correct?
A: Correct.

**2.** The trial court did not note expressly that the husband's two contributions from separate funds (the purchase of the unimproved land for $20,000 and his contribution to the building of the home for approximately $30,000) were "transmuted" into marital funds. Rather, the trial court noted that those funds were commingled and became marital property.

**3.** All further statutory references are to RSMo.1994 unless otherwise indicated.

assessment of witness credibility, this court defers to the trial court's determination of that credibility. *Feinstein v. Feinstein*, 778 S.W.2d 253, 261 (Mo.App.1989); *True v. True*, 762 S.W.2d 489, 492 (Mo. App.1988).

## Analysis

### I.

Appellant first argues that the trial court misapplied the law in finding that the land and house titled only in Appellant's name were commingled and therefore erred in not setting aside Appellant's non-marital interest in the property. Specifically, Appellant seeks to be credited with the $20,000 that he used to purchase the land and with the approximately $30,000 used to build and furnish the house. Appellant argues that the court erred in not applying the "source of funds" rule because this $50,000 was and is his separate, non-marital property.[4]

In 1984, the Supreme Court of Missouri invoked the "source of funds" doctrine (which is now reflected in § 452.330.4). *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 825 (Mo. banc 1984). The effect of this doctrine is that courts must set aside a spouse's separate property in dissolution cases, and property is deemed separate or marital based on the source of funds that financed the purchase. *Id.* at 824. Property is considered acquired as it is paid for so that a portion of the proper-

ty's ultimate value will be marital property. *Id.*

Property is considered non-marital if a spouse owned it before the marriage and retained title to it after marriage. *Kinsey–Geujen v. Geujen*, 984 S.W.2d 577, 579 (Mo.App.1999). Adding a spouse's name to the title creates a presumption that the property has been transmuted to marital property. *Id.* However, having both spouses' names on the title is not the sole means of transmuting separate property into marital property. "Where the parties continually commingle marital assets and earnings, and treat property as communal, separate property may be transmuted into marital property." *Cuda v. Cuda*, 906 S.W.2d 757, 759 (Mo. App.1995). In this regard, the parties' intent is the determining factor. *Kinsey–Geujen*, 984 S.W.2d at 579. Alternatively, property that is purchased with funds from separate property *"in contemplation of marriage* and [that is] *intended to be marital property"* may be considered marital property where there is evidence to support such a finding. *Colborn v. Colborn*, 811 S.W.2d 831, 834–35 (Mo.App.1991) (emphasis added).

Because the marital home was never titled in Respondent's name so as to invoke a presumption of transmutation, the question is either 1) whether there was sufficient commingling of the assets so as

---

4. The relevant portions of § 452.330 follow:

1. In a proceeding for dissolution of the marriage or legal separation, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage....

to transmute the home to marital property, or 2) whether the property was purchased in contemplation of marriage with the intent that it be marital property. Viewed in the light most favorable to the trial court's decision and given the Missouri precedent set forth below, this court concludes that the trial court did not err in applying the law.

In *True v. True, supra,* the wife complained that the trial court erred in classifying all of the property in dispute as marital. 762 S.W.2d at 490. At issue were five parcels of land, some of which were titled in one spouse's name, some of which were titled in both spouses' names. *Id.* at 490–91. Three parcels were acquired during the marriage, two were acquired by the wife before the marriage. *Id.* at 491. A month before the parties married, the wife purchased property where the parties lived for five years. *Id.* She paid the down payment and made all the payments on it, though the husband worked on the property and paid her back half of the down payment. *Id.* This was not subject to the source of funds rule, the court concluded, in part because the parties failed to keep their financial affairs separate and in part because that property was used as the marital residence: non-marital property "may lose its character as such if there is evidence which clearly shows that there existed an intention to contribute the property to the community." *Id.* at 492–93.

In *Bashore v. Bashore,* the parties opened a bank account in both of their names and "contemplated marriage." 685 S.W.2d 579, 582 (Mo.App.1985). A month after the account was formed, the (future) husband purchased a building lot, but he took title in his name alone. *Id.* He then procured a loan and had a residence built. Before final inspection and closing on the loan, the couple married. *Id.* Both parties' names were on the final mortgage loan

documents, though the wife's name was never added to the title. *Id.* Payments on the mortgage were made from the joint account. *Id.* The court held that because the wife's funds contributed to the acquisition of the property-first because of the initial payment and second to the mortgage payments by marital funds-the fact that the husband's name alone was on the title was irrelevant. *Id.* at 593.

In *Cuda v. Cuda, supra,* the parties cohabitated prior to marriage and purchased a house and a substantial amount of personal property during that time. 906 S.W.2d at 758–59. The (future) husband's separate funds funded the down payment, though the (future) wife contributed to the closing costs. *Id.* Because title was in both parties' names and because both signed a promissory note and contributed to the monthly mortgage payments, the court held that the house was correctly labeled marital property. *Id.* at 759. The court also found that the personal property was classified correctly as marital property because the parties had continually commingled marital assets and earnings and treated the property as communal; the personal property had been transmuted. *Id.*

In *Colborn v. Colborn, supra,* the parties co-habitated for two years and then separated. 811 S.W.2d at 832. Four months later, they married and resumed cohabitation. Six months after the marriage, they sought divorce. *Id.* During their period of cohabitation, each party accrued considerable assets. Of particular controversy was a dairy farm partnership formed by the husband and his parents near the end of the parties' cohabitation (prior to their reconciliation and marriage). The trial court found that the husband's interest in the partnership was marital property, finding that it was acquired "in contemplation of marriage." *Id.* at 833.

"Property is marital if it is purchased in contemplation of marriage and intended to be marital property." *Id.* at 834. In reversing, the appellate court noted that there must be evidence, such as testimony, to support a finding that the property was purchased in contemplation of marriage. *Id.* at 835. "Where there is conflicting evidence about whether property was purchased in contemplation of marriage, the trial court's finding will generally not be disturbed." *Id.* at 835. The court held that there was insufficient evidence to support the finding that the property was marital because the evidence was "skeletal" and was based on the wife's testimony that property was purchased in contemplation of marriage simply because the parties co-habitated and subsequently married. *Id. See also Marriage of Nored*, 971 S.W.2d 328, 330 (Mo.App.1998) (camper purchased five years before marriage, while parties cohabited, was separate property) (citing *Stottlemyre v. Stottlemyre*, 877 S.W.2d 176, 176–77 (Mo.App. 1994) (house owned by husband for unspecified time before marriage and titled solely in his name was separate property)).

Either under the theory of transmutation based on continuous commingling of separate and marital property or under the theory of property purchased in contemplation of marriage, this court finds that the trial court did not misapply the law in determining that the marital home was marital property. The parties failed to keep their financial affairs separate (mortgage payments were made from joint account, etc.), the property was used as the marital residence into which both parties devoted resources and energy, Respondent was jointly liable for the mortgage on the entire property, Appellant testified the property was purchased while the couple were engaged, co-habitating,

and "in anticipation" of marrying and building a home. Appellant's own testimony provided sufficient evidence that the property was purchased in anticipation of marriage with the intent that it be marital property.[5] As noted in the standard of review, the trial court has broad discretion in characterizing property as marital or separate, and it did not misapply the law. This point is denied.

## II.

■ Appellant argues also that the trial court erred by failing to divide the land and house according to the contribution of the parties. He argues that the trial court's distribution was against the weight of the evidence and a misapplication of § 452.330.1 because the court failed to consider Appellant's contribution to the marriage.

Section 452.330 contains several factors, relevant here, that courts must consider in disposing of property: the economic circumstances of each spouse, the contribution of each spouse, including the contribution of a homemaker, the value of nonmarital property set aside to each spouse, and the conduct of the parties during the marriage.

■ As with determining whether property is martial or separate, the trial court has considerable discretion in dividing marital property. *Jordan v. Jordan*, 984 S.W.2d 878, 881 (Mo.App.1999) (citing *Dardick v. Dardick*, 670 S.W.2d 865, 869 (Mo. banc 1984)). Division of property by the trial court will be affirmed if it is not unduly weighted in favor of one party so as to constitute an abuse of discretion. *Id.* (citation omitted). The trial court's division of property is presumed correct, and

---

5.  *See supra* note 1 and accompanying text.

the husband bears the burden of overcoming this presumption. *Id.*

In dividing the marital property at hand, the trial court likely considered Respondent's contributions as homemaker, the respective post-marriage incomes of the parties, and the parties' conduct during marriage (possibly the alleged physical and/or mental abuse, noted above). In reviewing the findings, there is no evidence that the trial court unduly weighted its determination in favor of the wife. The trial court's decision was neither against the weight of the evidence nor a misapplication of the law. This point is denied.

The judgment is affirmed.

All concur.